CLOPTON, J.
The appellee, on the 29th of September, 1843, purchased of Jacob T. Coles a tract of land, and executed a bond, payable on the 1st of November, 1843, for $4,202 34, being one-half of the purchase-money ; and, for the other half, he executed three other bonds, in equal sums, payable respectively on the 1st day of .Tune, in the years 1845, ’46 and ’47. By the agreement and understanding of the parties, the large bond, although a few days were given for its payment, was to be considered as a cash payment. The vendor, Jacob T. Coles, was in failing circumstances, and, to relieve himself from the pressure of immediate demands, he sold his land for one-half of the purchase-money in cash ; and in addition to this, for his further relief, he obtained from Richard Tyree, a commission merchant in Lynchburg, an advance of $1,000, to be repaid out of his crop of tobacco made in 1843, which was to be consigned to the merchant for that purpose; but the commission merchant refused to make the advance without additional security. In consequence of this, the appellee, Wooding, became the surety of Jacob T. Coles, in a bond to Tyree, for $1,000, dated 29th September, *1843, and the tobacco was conveyed to Tyree, by deed, on the 6th of January, 1844. Although this bond was made payable on demand, yet it was agreed and understood between the parties, that its payment was not to be demanded until the crop of tobacco could be sent to market in the following year; and Wooding became the surety, upon the express agreement with Coles, the principal, that if the proceeds of the tobacco should be insufficient, that he would be perfectly secure, having the means of Coles in his hands to save him harmless. These means were what he owed for the purchase of his land, as he was not indebted to him on any other account.
The bond due on the 1st of November, 1843, was not paid at maturity, but was reduced to a comparatively small balance, by payments at several times, some of which were before maturity, when, on the 6th of February, 1844, Jacob T. Coles assigned it to Robert T. Coles, who, on the 10th of February, 1844, gave written notice of the assignment to Wooding, who finally discharged *714 it on the 24th of May, 1845. In -the meantime, Jacob T. Coles had, on the 6th of January, 1844, by deed, assigned the three last bonds for the purchase-money, to Jos. M. Terrj', the appellant, for the benefit of John Coles. The crop of tobacco consigned to Tyree, for the discharge of the bond due to him, proved insufficient for that purpose; and, on that account, Wooding, before he paid the balance due on the bond assigned to Robert T. Coles, had paid, for getting the tobacco to market, the rent of the land on which it was made, the overseer’s share of the crop, and the balance due to Tyree, sums amounting in the aggregate to $575 94. He had also paid a small sum for finishing a tobacco barn, which Coles, his vendor, had agreed to pay for.
On the 29th of May, 1845, by a decree of the Circuit Court of Pittsylvania, the lands purchased bj Wooding of Jacob T. Coles were subjected to the .lien of a judgment, in favor of Price against Jacob T. Coles, as surety for Ifinn & Patton in a delivery bond, which lien, ^amounting to $512 72, Wooding discharged on the 2d day of June, 1845.
Terry having obtained judgments on two of the bonds assigned to him by the deed of January 6th, 1844, Wooding applied for the injunctions awarded in this cause, asserting in his bill the right to set-off the demands before mentioned against the judgments. Upon the hearing, the set-offs were allowed, and the injunctions perpetuated; from this decree, this appeal was allowed.
In the assignment of error, and in the argument, several principles have been contended for: One is, that the set-offs were applicable only to the first bond, and that Wooding was bound so to apply them. On this question, the court is of opinion, that they were not applicable to the first bond, because so to apply the sums paid on account of the bond to Tyree, would violate the agreement between Jacob T. Coles and Wooding at the time he became surety. The bond to Tyree was to be paid out of the tobacco, which could not be in market before 1844. The first bond to Jacob T. Coles was intended to be as cash, for the relief of the vendor, who, in addition, and for his further immediate relief, obtained the advance from Tyree. To suppose, then, that J. T. Coles, when he agreed that Wooding should be secured out of his means in Wooding’s hands, intended that security to apply to the first bond, his object of obtaining additional relief would have been defeated; for the payment of the first bond, at least to some extent, would thereby have been postponed until the result of the sales of the tobacco was known; of which agreement or understanding between Wooding and Jacob T. Coles, John Coles was apprised before and at the time of the assignment to Terry for his benefit; and, also, because there is no sufficient proof in the record that Wooding had notice of the assignment to Terry, before he had notice of the assignment of the first bond to Robert T. Coles. The only evidence referred to, as tendng to prove that he had notice of the ^'assignment to Terry, is his silence in his bill upon the subject, and the evidence of Pannill, who says that Wooding informed him, on the 25th of 'December, 1843, that John Coles informed him (Wooding) that Jacob T. Coles had transferred to him (John Coles) all the bonds except one. This could not have referred to the assignment of Terry; for the deed had not then been executed. The bonds are not in the record, and they do not appear to have been assigned otherwise than by the deed of the 6th of January, 1844, and the judgment at law was in the name of Jacob T. Coles, who sued for the benefit of Terry, trustee. And as to the amount paid in discharge of Price’s judgment against Jacob T. Coles, the decree, which fixed the lien of that judgment upon the lands in the hands of Wooding, was not rendered until after Wooding had fully paid off the first bond assigned to Robert T. Coles; and Wooding, until he discharged that lien, on the 2d of June, 1845, had no right of set-off against any one; and he then only became entitled to be subrogated to the rights of Price, the judgment creditor.
Another ground of error is, that the payments on account of the tobacco were voluntarily made by Wooding. Upon this question, the court is of opinion, that, as the tobacco was specially pledged by deed to Tyree, he might and ought property to have, made the payments, as they were charges for which the tobacco was primarily liable, to wit, the landlord’s lien by distress levied, the overseer’s share of the crop and the charges of transportation, and charged the sums paid ag’ainst the proceeds of sale in the account of sales; and as Wooding was surety in the bond to Tyree, and thus bound to make good any deficiency, he had an interest and a right to look to the proper application of the subject ; and having paid those sums, and thus, pro tanto, increased the amount of the proceeds' of sale credited on the bond, he is entitled to be substituted to the rights of Tyree.
Another ground of error is, that the set-offs are legal, *and cannot be set up in equity. Upon this question, the court is of opinion, that the set-off claimed for the payment, in discharge of Price’s lien, is purely equitable, arising from the doctrine of substitution — the creature of equity; and that the other, arising out of the bond to Tyree, is also equitable; for although the balance paid on the bond, had it stood alone, was a legal set-off, yet, as it was connected with the other payments made by Wooding for Tyree, the creditor, on account of the subject pledged, and involved the necessity of settling the accounts before the balance could be ascertained, Wooding is entitled to be substituted to the rights of Tyree in equity.
The last error assigned was abandoned, under the influence of the decision of the Court of Appeals, in Jones, &c. v. Myrick’s *715 ex’or, 8 Grat. 179, and the small set-off for finishing' the barn is not controverted.
The court is, therefore, of opinion, that there is no error in the said decree, and that it should be affirmed with costs.
FIELD, P., and THOMPSON, J., concurred.