# Wytheville.

## DAILY'S EX'OR v. WARREN AND ALS.

### JUNE 11TH, 1885.

1. ASSIGNMENTS—*Recordation—Case at bar.*—Assignments of choses in action need not in Virginia be recorded. The case here is one of competitive assignments.

2. PRACTICE IN CHANCERY—*Assignors parties.*—Where one files petition in pending cause to assert claim as assignee to debt reported therein, the assignor must be made party to petition and summoned to answer.

3. IDEM—*Review and reversal—Witness.*—Decree directing payment of such debt to such petitioning assignee, will be reversed on petition of the assignor, who has not been made party and summoned to answer. And on hearing of such petition to re-hear, the assignor and a rival assignee are competent witnesses to prove the assignment to the latter and the consideration thereof.

4. EVIDENCE—*Subsequent declarations.*—Declarations made and letters written by assignor subsequent to assignment, are inadmissible as evidence against his assignee.

5. ASSIGNMENTS—*Competitive assignees—Burden of proof.*—Where subsequent assignee claims that he took his assignment for value, without notice of the previous assignment, and that the previous assignment was fraudulent, the burden is, of course, on him to prove the case.

Heard at Richmond, and decided at Wytheville.

Appeal from decree of circuit court of Loudoun county, rendered January 23rd, 1883, in the cause of *Warren* v. *Lersner,* which was a creditors' suit against the estate of Gustavus Lersner. An account was ordered and taken, and the report showed among other debts, one of $3900, with interest from May 2nd,

1876, to Morris Lersner, and secured by trust-deed on lands in Fauquier county. Of this debt, $1387.78 was assigned to Aaron Daily, on 3rd April, 1877. Daily's ex'or, in April, 1880, filed his petition in said cause, setting up this assignment, and praying that so much of the said debt be decreed to him. To this petition neither Morris Lersner nor Ignatius Lersner was made a party. In October, 1880, a decree was entered according to the prayer of the petition. But Morris Lersner had, on 15th March, 1877, for value received, assigned by an instrument under seal, and acknowledged before a notary, but unrecorded, to Ignatius Lersner, $1900 of said $3900 debt, and had delivered the bond evidencing the debt to the assignee. Of this assignment, Daily had notice on 3rd April, 1877, when he took his assignment as security for a debt, which originated from Morris Lersner to said Daily, after 15th March, 1877. Before the money was paid to Daily's executor under the decree of October, 1880, Morris Lersner and Ignatius Lersner filed their joint petition in said suit, setting forth the said assignment of 15th March, 1877, asking that the decree of October, 1880, be reviewed and reversed; and that the payment to Daily's executor be enjoined, and that $1900 of the said $3900 debt be paid to the assignee, Ignatius Lersner, in preference to said Daily's executor. To this last petition Daily's executor demurred, and answered, and averred that Daily was an assignee for value, without notice of the previous assignment, which he contended was void, because made with intent to hinder, delay and defraud the assignor's creditors. By the decree complained of, the court below overruled the said demurrer, reversed the decree of October, 1880, and ordered the money to be paid to Ignatius Lersner. It also overruled the exceptions of the depositions of Morris Lersner and of Ignatius Lersner, taken in the cause in their own behalf, to prove the assignment of 15th March, 1877, and the consideration thereof; and sustained exceptions to certain depositions and letters offered by Daily's executor in his own behalf; and it

also decided that Morris Lersner should have been made a party defendant to the petition of Daily's executor, and summoned to answer. From this decree Daily's executor appealed to this court. The other facts and points raised are stated fully in the opinion.

*Harrison & Powell*, for the appellant.

*E. Nichols* and *J. W. Foster*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

In 1872 a lien creditor's suit, under the style of *Warren* v. *Lersner*, was instituted to enforce the lien upon the real estate held by Gustavus Lersner in the counties of Loudoun and Fauquier. An acccount was ordered in June 1873. The commissioner returned an account of liens, which was confirmed by the circuit court of Loudoun, in October 1874: and the Loudoun lands were ordered, by the court, to be sold. Part of these lands had been sold, when, in the summer of 1876, the defendant, Gustavus Lersner, died; and the cause was revived against his executor and devisees. In October, 1876, a decree was entered for the commissioner to review and revise his account of liens, and to take further account thereof, as well as of all other debts outstanding against the late Gustavus Lersner.

The commissioner returned his report of debts with their priorities, which was confirmed by the court; and, among them, a debt due to Morris Lersner of $3900, with interest from May 2d, 1876, and secured by a deed of trust, recorded in Fauquier county, upon the lands of Gustavus Lersner in that county. The lands were all sold, and the liens transferred to the fund in the cause.

Aaron Daily became an assignee for value, of this lien reported in favor of Morris Lersner to the extent of about $1500, by virtue of various assignments, made from time to time, by

Morris Lersner during a period running from April 3d, 1877, to May, 1879. In November, 1879, Aaron Daily died; and in April, 1880, his executor (the appellant) filed a petition in the cause of *Warren* v. *Lersner*, setting out these various assignments by Morris Lersner to his testator, and asking that all dividends on the Morris Lersner debt, reported in that cause, might be decreed to be paid to him until the said assignments should be fully paid.

To this petition Morris Lersner was not made a party, although his counsel suggested to the court that he ought to be made a party defendant to the petition; and the court, upon an inquiry and report from a commissioner as to what part of the interest of Morris Lersner in the cause was covered by these assignments, by its decree of October term, 1880, ordered its commissioner of sale to collect the fund belonging to the cause, and, after payment of costs, to pay the residue to the parties to whom the commissioner had reported it to be due— among others, to the executor of Aaron Daily, as assignee of Morris Lersner, the sum of $1387.78.

In September, 1881, before the aforesaid order in favor of Aaron Daily's executor had been executed, Morris Lersner and Ignatius Lersner filed their joint petition, asking that the commissioner of sale should be enjoined from paying to Daily's executor the aforesaid sum decreed to him, on the ground that the entire dividend on Morris Lersner's debt was due to Ignatius Lersner, by virtue of an assignment to him, made on the 15th day of March, 1877, eighteen days prior to the assignment to Aaron Daily; and praying that the aforesaid order of October, 1880, in the pending case of *Warren* v. *Lersner*, in favor of said Aaron Daily's executor, might be reheard, reviewed and corrected; and for general relief. An injunction was awarded by the circuit judge, according to the prayer of the petition. To this petition the defendant, Aaron Daily's executor, demurred and answered, and contended that Aaron Daily was an assignee for value, and without notice of the previous

assignment to Ignatius Lersner, and was entitled to preference, because the assignment to Ignatius Lersner was made with intent to defraud; and because of the *laches* of Ignatius Lersner in leaving Morris Lersner in the control and apparent ownership of the fund. An order of reference was made to a master commissioner, who reported January 22d, 1882, that the assignment to Ignatius Lersner, by virtue of its proper date, of March 15th, 1877, was entitled to priority over the subsequent assignments to Aaron Daily. To this report appellant excepted; as, also, to the competency of Morris Lersner's and other testimony, taken and filed in the cause.

The court overruled the demurrer to the petition, and overruled the exceptions to the commissioner's report, and to the testimony of Morris Lersner and others; and, by its decree of 23d of January, 1883, confirmed the said report, and ordered the money to be paid to Ignatius Lersner. It also sustained exceptions to certain depositions taken in behalf of appellant; and overruled a motion of appellant for further time to show actual fraud, after the decision of the case by the decree complained of.

This is a competition of assignments, and the only question before this court is the validity and *bona fides* of the assignment of March 15th, 1877, by Morris Lersner to Ignatius Lersner.

We are of opinion that the circuit court did not err in allowing the petition of Morris Lersner and Ignatius Lersner to be filed in the cause, September 10th, 1881, and in overruling the demurrer. No final decree was made in the cause until January, 1883, and in September, 1881, the cause was still pending. By the decrees entered, the rights and questions of subrogation were reserved to any person, and the commissioners of sale were directed to collect and report their proceedings to the court, from time to time, and, if necessary, to bring suit against the purchasers. And in October, 1881, the legal title to the land sold was brought before the court, and a deed to the purchaser was decreed to be made. *Sexton's ex'ors* v. *Patterson, &c.,* Va.

Law Journal, Feb., 1884, p. 73; *Miller's adm'r* v. *Cook's adm'r,*
77 Va. (2 Hansbrough) 806; *Ryan's adm'r* v. *McLeod,* 32 Gratt.
377. None of the several assignments made by Morris Lersner
of his interest in the cause were absolute, or embraced his whole
interest. Barton's Ch. P. vol. 1, p. 163; *Newman* v. *Chapman,*
2 Randolph, 93; *James R. & K. Co.* v. *Littlejohn,* 18 Gratt. 83.
It was believed to be a good asset for its full amount of $3900.
Daily's petition, at April term, 1880, brought in *new* matter af-
fecting the interests of Morris Lersner, who had never been a
party to the cause pending, and who had no notice of the pro-
ceedings had therein before the commissioner, by process or
otherwise; and he was a necessary party to the petition of his
assignee, Ignatius Lersner; and he ought to have been made a
party defendant to the petition of Daily, and been summoned
to answer the same. The court saw its error in not making
Morris Lersner party defendant to Daily's petition, and award-
ing process for him to answer it; that he had had no notice of
the proceedings before the commissioner in 1880; and that in-
justice had thus been done both to him and to his assignee Ig-
natius Lersner. Under the authority of *Wooding* v. *Bradley,*
76 Va. (1 Hansbrough) 614; *Smith* v. *Blackwell,* 31 Gratt. 300; it
was manifestly proper to allow the petition to be filed. The
petition of Morris Lersner and Ignatius Lersner was filed in a
pending cause to correct error hurtful to their interest, in pro-
ceedings to which they had not been parties, and of which they
had no notice. In such cases the court will look at the real
essence of the claim and correct injustice. So long as a case
remains, or is retained on the docket, the court may receive ex-
ceptions to commissioner's report, even after its confirmation,
if it be clearly shown that, if carried out, the report will work
injustice. *Wooding's ex'ors* v. *Bradley's ex'ors,* 76 Va. (1 Hans-
brough) 614–16. The condition of the record, when, in 1881,
the Lersners, Morris and Ignatius, filed their petition, showing
that they, then, for the first time, knew of the petition filed by
Aaron Daily's executor, and the proceedings had under the de-

cree of April, 1880, by Commissioner Powell; the fact that the
decree of October, 1880, had not been executed by the paying
over the money by the commissioner of sale; that neither Mor-
ris Lersner nor Ignatius Lersner had been made a party to
Daily's petition, nor had been summoned to answer, or affected
with notice of it, or of the proceedings had by commissioner
under the decrees of 1880, by personal service or otherwise,
leaves no doubt of the sufficiency in law of their petition to re-
hear and correct the error and injustice of a decree which gave
to other and junior assignees $1520.73 of a fund to which Ig-
natius Lersner was entitled, by virtue of his prior assignment
of March 15, 1877.

The court did not err in overruling the exceptions to the
deposition of Morris Lersner and of Ignatius Lersner. The
questions raised and put in issue by the petition and pleadings
were never before the court, and presented original or new mat-
ter of controversy. The deposition of Morris Lersner was al-
lowed to stand only in regard to the consideration and execu-
tion of the $1900 assignment; and all facts in relation to the
$600 item (which is not before the court, and is immaterial to
the main and controlling question) were suppressed. Ignatius
Lersner was clearly a proper and competent witness as to the
consideration and execution of the said assignment and want
of notice of Daily's petition, and of the proceedings by the
commissioner under the decree of April, 1880.

The court did not err in sustaining exceptions to appellant's
depositions. They were allowed to be read for the purpose of
impeaching the credit of Morris Lersner; but they fail to do
this. The deposition of Henry Harrison relates entirely to the
$600 item, and refers to things which occurred after March
15th, 1877, out of Ignatius Lersner's presence, and is wholly
irrelevant to the controversy in regard to the $1900 assignment.
John Carr's letter to Harrison & Powell, attorneys, in 1881, is
subject to the same objection. C. K. Harrison's affidavit em-
braces only sundry letters written to him by Morris Lersner,

June, 1878, etc. No matter what Morris Lersner wrote to him *after* March 15th, 1877, as there is no pretence that Ignatius saw or authorized them, they are not evidence against him. This affidavit and these letters were injected into the records April 24th, 1882, after Morris Lersner had been twice examined, without calling his attention to them, or giving him an opportunity to show under what circumstances and why they were written. L. H. Powell's depositions were properly objected to, because they detail matters which occurred out of the presence of Ignatius Lersner, after March 15th, 1877, and conversations with Morris Lersner in 1878, '79, '80 and '81; and with Aaron Daily, out of the presence of both Morris Lersner and Ignatius Lersner. "Declarations of an assignor after assignment are inadmissible in evidence against his assignee." *Barbour* v. *Duncanson*, 77 Va. (2 Hansbrough) 76–83; *Smith* v. *Betty*, 11 Gratt. 752–764.

According to the rule laid down in Greenleaf's Evidence, 12 edition, sections 461–466, the evidence of L. H. Powell and of C. K. Harrison was inadmissible; and that of John Carr's letter and Henry Harrison's deposition are irrelevant, and none of them evidence against Ignatius Lersner. The answer of Daily's executor upon its face, discloses that he, of his own knowledge, knows nothing of the case stated in Lersner's petition, and therefore has not the weight of a responsive answer.

On the 15th day of March, 1877, Morris Lersner, in the city of New York, did assign, transfer and deliver to Ignatius Lersner, of Paris, France, the bond of Gustavus Lersner, payable to him, Morris Lersner, dated May 2d, 1876, at twelve months after date, secured by a deed of trust on his Fauquier lands. The said assignment was in writing, under seal, duly acknowledged before a notary public on the same day. Morris Lersner was about to return to Virginia, and Ignatius Lersner to Paris. The execution of said assignment and the delivery of the bond itself to the assignee, Ignatius Lersner, are proven by the notary public, by Ignatius Lersner, by Morris Lersner and by Emil Lers-

ner, who wrote the assignment. Ignatius Lersner took and
held the said bond for $3900, with a covenant in the contract
of assignment, to re-assign and surrender the said single bill
of $3900 to the party of the first part, if and when the said
Morris Lersner shall well and truly pay to said Ignatius Lers-
ner out of the proceeds of sale of said real estate above de-
scribed, or otherwise, the just and full sum of $1900, with seven
per cent. per annum interest, from 1st day of January, 1874,
till paid. Morris Lersner was divested of the possession, con-
trol and ownership of the said bond, and did not even have a
copy of it; while the deed of trust by which it was secured was
recorded in Fauquier county.

As to the consideration for the said assignment to secure the
payment of the said $1900, with interest, to Ignatius Lersner,
and its *bona fides*, there can be no doubt, or room for question.
In 1874, Morris Lersner, who was then indebted to Ignatius
Lersner for advances made, as per account entered and stated
in memorandum books shown in the record, closed those ac-
counts by the execution and delivery of his *due-bill* March 2d,
1874, for the ascertained and stated balance of $1831.68. He
was not then indebted to anyone else, so far as the record shows;
and, assuredly, not indebted to, or having any relation of busi-
ness with, Aaron Daily, whose specific claim, asserted in this
controversy, took its inception April 3d, 1877, the date of his
assignment.

In March, 1877, Ignatius Lersner was about to go to Paris,
France, and he and Morris Lersner met in New York, and
made a settlement of their business affairs with themselves, the
old due-bill being surrendered, and Morris executing and de-
livering therefor the formal written assignment of March 15th,
1877, of the $3900 bond due to Morris by the estate of Gus-
tavus Lersner, to secure to him the payment of $1900, with in-
terest at 7 per cent., from January 1st, 1874, upon the terms
and covenants contained in the said written assignment to re-
assign and surrender back to Morris Lersner the said bond or

single bill upon the payment to him by Morris of the said debt secured by the said assignment, with condition of defeasance.

This assignment of March 15th, 1877, by Morris Lersner to Ignatius Lersner, was neither fraudulent in fact nor in law. The debt secured to Daily by the assignment made to him April 3d, 1877, was not in existence on March 15th, 1877; and the record shows, beyond debate, that on April 3d, 1877, Powell Harrison, the attorney for Daily, who wrote the assignment in his favor, believed, as the approved reports of the master commissioner in the cause showed, and as Morris Lersner believed, and had no reason to distrust, that the proved and reported debt due to Morris Lersner in the cause, was good for its full face amount, and would be paid in full out of the proceeds of sale of the Fauquier lands, upon which it was secured by deed of trust. It was not necessary for Ignatius Lersner to aver in his petition, that Daily, on April 3d, 1877, when he took his assignment, had notice or knew of the assignment to him of a part of the fund due, in the cause, to Morris Lersner. He could stand, and does now stand, upon the rock of his *priority* of assignment, and the delivery to him, and his possession of, the bond itself for $3900. Daily's executor, in his answer avers, affirmatively, that Aaron Daily, his testator, took his assignment of April 3d, 1877, without notice of the prior assignment; and this is a part of appellant's case, *not appellee's;* yet, the record does show, by the evidence of A. J. Lersner, that Morris Lersner, on April 3d, 1877, in the presence of Aaron Daily, stated to Powell Harrison, attorney for Daily, that he had already assigned $1900 of the claim to Ignatius Lersner, and that only $2000 of the debt was left. The bond itself, evidencing the debt, was not in the possession of Morris Lersner; and it is not to be presumed or believed that Powell Harrison, acting as adviser and attorney for Aaron Daily, and writing the assignment in his favor, would have failed to ask for the bond, and to require it to be filed and delivered along with assignment to Daily, unless he and Daily both knew of the assign-

ment of $1900 of its value, and its delivery to and possession by Ignatius Lersner. The record leaves no room for doubt, that Harrison and Daily, and the commissioner of the court, and Morris Lersner, then confidently believed that the claim of Morris Lersner for $3900 would be paid in full, and a large surplus of the proceeds of sale of the Fauquier lands be left for satisfaction of subsequent lienors.

The charges of *laches*, secret trust, and fraud, are not only not proved, but are disproved by the record. Ignatius Lersner was absent, in Paris, and when at home, in New York; and this claim, partly assigned to him, could only be paid out of the last payment for the land sold, which was not due until October, 1881. The rule *caveat emptor* applies to assignee of choses in action, and especially when, as in this case, the assignor has not the chose in possession to deliver to the assignee. *Brown* v. *Taylor's committee*, 32 Gratt. 138. In this case there was no possession of the bond assigned and delivered by Morris Lersner to Ignatius Lersner, March 15th, 1877, nor of the lien, for that was recorded in Fauquier. Morris Lersner regarded it as a good asset, and so did Powell Harrison; and Ignatius Lersner was in no wise privy to any of the assignments made to Daily; and he, Daily, took them with actual as well as presumptive notice of the prior assignment and delivery of the bond to Ignatius Lersner to secure his claim for $1900. The failure to produce the bond assigned was notice, presumptive, to Aaron Daily and to P. Harrison, his attorney, of its being out of Morris Lersner's possession, and put them upon inquiry. 2 Minor Inst. 889. "A subsequent purchaser is charged constructively with notice of all facts and instruments, to the knowledge of which he would have been led by an inquiry into the incumbrance, or other circumstance affecting the property, of which he had actual notice." Daily had actual knowledge that there was a bond in this case, and so had Powell Harrison, for the very assignment which they wrote and took April 3d, 1877, so states. By no word, or act, or conduct, of Ignatius Lersner,

was Aaron Daily induced or led to take the assignment of April 3d, 1877. He was not present, and never heard of it until 1881.

We do not think the court erred in overruling the motion for further time to show actual fraud, made after the decision of the case. It had been pending since September, 1881, and all the proofs, on part of appellee, had been filed as early as April, 1882, nine months before the court decided the cause. Appellant had charged fraud, and want of notice of previous assignment; and, as his own case, he was bound to prove it. He had ample time, and submitted the case to the judgment of the court, as a whole; and the statement upon which he based his motion for further time, or, in fact, a new trial, made no pretence of new matter, and it was not sworn to by anyone.

There was and is no law in Virginia, requiring the assignment of a chose in action to be recorded, and if recorded it would not affect any one with notice. 2 P. & H. 178; *Gregg* v. *Sloan*, 76 Va. (1 Hansbrough) 497; *Kirkland, Chase & Co.,* v. *Bruce,* 31 Gratt. 126; *Bickle* v. *Chrisman, &c.,* 76 Va. (1 Hansbrough) 678. Assignee of chose in action is not required to do more than take possession of the thing or evidence of debt assigned. After careful and critical comparison of the facts of this case with the facts of the cases cited by appellant, *Davis* v. *Turner,* 4 Gratt.; *Curd* v. *Miller,* 7 Gratt. 185; and *Twine's case,* we find no analogy or proper application to the case under review. Some of the cases cited were controversies concerning title to real property; and, in all of them, the assignor, or vendor, *retained possession* of the thing sold or assigned.

We concur in the judgment of the circuit court of Loudoun county, and the decree complained of must be affirmed.

DECREE AFFIRMED.