# Richmond.

Virginia Iron, Coal & Coke Co. v. Roberts & Others.

March 9, 1905.

Absent, Cardwell, J.

1. Equity—*Estoppel—Demurrer—Assigning New Grounds on Appeal.*—
   Where a bill alleges that the complainant purchased from a father
   a tract of land which he had previously conveyed to certain of his
   children; that the complainant knew nothing of the existence of
   the deed; that he purchased in good faith; and that the purchase
   was made with the knowledge, acquiescence, and consent of the
   children, this is sufficient to estop the children from setting up the
   conveyance to them against such purchaser, and the fact that they
   were under age cannot be set up for the first time in the appellate
   court—not having been stated among the grounds of demurrer
   specifically assigned in the trial court.

2. Purchaser Pendente Lite—*Rights Acquired.*—The rule that a per-
   son who acquires an interest in land involved in a pending suit,
   and from a party litigant, takes subject to the rights of the parties
   to the suit as finally adjudicated, and is concluded by the judgment
   or decree, is confined in its operation to giving effect to the judg-
   ment or decree which may be rendered in the suit depending at
   the time of the purchase.

3. Purchaser Pendente Lite—*How Affected.*—A purchaser having ac-
   tual or constructive notice of a pending suit can only be held
   chargeable with knowledge of the facts of which the record in the
   suit, as it existed at the time of his purchase, would have informed
   him. He cannot be charged with knowledge of facts afterwards
   brought into the case.

4. Purchaser Pendente Lite—*Incidental Equities of Co-Defendant.*—A
   pendente lite purchaser of land from one defendant is not charged
   with implied notice of equities between the co-defendants, which

are not the subject of litigation between the complainant and the defendants, and which do not in any manner affect that litigation, but appear only incidentally.

5. EQUITY—*Estoppel.*—In a suit to set aside and have removed, as a cloud on the title of complainant, a deed made by a father to his children, the fact that the grantees had a suit, which their father had brought in his lifetime to obtain title, revived in their names as heirs merely, and not as purchasers, does not estop them from asserting their rights as purchasers in the present suit.

6. EQUITY—*Final Decree.*—A decree in suit for partition which accomplishes all the purposes of the suit, and leaves nothing further to be done in the cause except to settle the question of costs, is a final decree.

7. EQUITY—*Suit for Partition—Costs—Sale of Land for Costs—Final Decree.*—In a suit for partition, where no sale is necessary and none is made for the purpose of partition, the court is without jurisdiction to sell the land assigned to one of the parties to satisfy his share of the costs of partition. The judgment for such costs would probably be a preferred lien on the land, but would have to be enforced like other judgment liens by a bill in equity. If such a decree could be held to bind the parties to the suit, it certainly would not bind a third party, claiming an interest in the land, who was not a party to the suit, and had no notice of the proceedings. After the purposes of the suit have been accomplished and costs decreed, the suit is ended.

Appeal from decrees of the Circuit Court of Wise county, in a suit in chancery, wherein appellant was the complainant, and the appellees were the defendants; and from a decree in another suit, in which appellees were the complainants, and in which appellant filed a petition to rehear.

*Reversed* in first case,
*Appeal dismissed* in second case.

The following statement of the facts in this case is taken from the brief of counsel for the appellees:

Prior to 1876, one Thomas Rogers died, leaving five heirs, viz: Louisa Spear, wife of William Spear; Elizabeth, the wife of Jonathan Richmond; Nancy, the wife of John Jones;

Evelyn, the wife of John Venable, and James M. Rogers. At the time of his death he claimed to own a large boundary of land lying in Wise county, Virginia. In 1875 said James Rogers and William Spear, claiming to represent the said heirs, made sale of the said Rogers' land to James Hunsucker. This boundary of land contained 821 acres. Shortly after this, James Hunsucker sold a portion of this boundary to William L. Roberts, and another portion to John Hunsucker, Roberts and John Hunsucker agreeing to pay a certain part of the purchase money directly to the Rogers heirs, and, after this, to-wit, on January 5, 1876, William Spear, claiming to be the agent of all the Rogers heirs, executed a title bond to James Hunsucker, William L. Roberts and John Hunsucker, jointly, for the whole 821 acres. While this was a joint title bond for the whole boundary, it was understood between the parties that each of the purchasers was to get a definite aliquot part thereof, and was to be bound only for definite parts of the purchase money, respectively. This last paper was treated by all of the parties as having superseded the first contract, and, indeed, William L. Roberts did not know of the existence of the first paper—he knew that John Hunsucker had purchased the land, but did not know that he had a writing showing his purchase.

In 1879 William L. Roberts, James Hunsucker and John Hunsucker filed their bill in equity against William Spear and the Rogers heirs, in which they set forth that they had paid most of the purchase money, but that they had ascertained that William Spear probably did not have authority to make sale of said land; that the title to parts of the land was defective; that the Rogers heirs had agreed to pay the taxes, but had failed to do so; that some of said heirs were married women, and were claiming not to be bound by the said contract; that the Rogers heirs had obtained judgments for a part of the unpaid purchase money; and thereupon they prayed

that the said judgments be enjoined; that the question of title be enquired into; that the Rogers heirs be compelled to make them good title, and that in case they did not have title for parts of the land that complainants be given a rebate on account thereof, and for an account and general relief.

William Spear answered, on November 26, 1879, asserting that he had authority to make the sale; that the Rogers heirs had good title, and denying some of the payments claimed by complainants. Thereupon the case was referred to L. H. N. Salyer, commissioner, to report on title the number of acres in the boundary, and the payments which had been made by complainants.

This case pended for a number of years, and was referred and re-referred to commissioners to report on the above questions, the Rogers heirs, or at least their representative, Spear, at first insisting upon the specific execution of the sale contract. In the meantime, however, the land had very much increased in value, and in 1889 the said heirs filed an answer, claiming that the married women, who owned a three-fifths interest, were not bound by said contract, and praying for a recision thereof.

At the April term, 1890, the court entered a decree holding that Evelyn Venable and Lou Spear were not bound by the contract; but, as it was claimed that Elizabeth Richmond had, in her lifetime, made a conveyance of her interest to the plaintiffs, the question as to whether her heirs were bound by the contract was left open (it was afterwards decided that the heirs of Elizabeth Richmond were not bound). The court further held that James Rogers was bound by the contract, and that John Jones and wife, who had conveyed to him, were likewise bound, and as the plaintiffs elected to take title to such of the land as they could get, the case was again referred to a commissioner for the purpose of reporting on title. Afterwards

the duties of the commissioner were amplified; that is, he was directed to ascertain the rental value of the lands, and also the value of the improvements which the plaintiffs had put thereon, etc.

The case again pended for a number of years, and several reports were made and recommitted, and finally the court held that three-fifths of the land should be laid off to the said married women or their heirs, or assigns, and that the remaining two-fifths should be laid off to Arch Hunsucker, the vendee of John and James Hunsucker, and William Roberts, "and the latter assignment they are to make so as to give to said Arch Hunsucker and W. L. Roberts the land held by each where they now live, and where F. M. Starnes lives, if the same can be done without prejudice to others in interest." This decree is dated September 9, 1893. It also appointed commissioners to lay off the said lands, ascertain the rental value during the time which the plaintiffs had had the same in possession, the improvements which they had put thereon, etc. The Starnes tract of land was a tract containing forty or fifty acres, which had been conveyed by W. L. Roberts and his children to W. H. Roberts, and by him conveyed to F. M. Starnes.

On November 22, 1893, the commissioners appointed to make partition filed their report, saying that they had assigned to W. L. Roberts a boundary containing 230.17 acres, including the Starnes tract; to Arch Hunsucker, 230.17 acres, and to Evelyn Venable and the heirs of Elizabeth Richmond and Lou Spear a boundary containing 552.43 acres.

By decree, dated September 11, 1895, entered by H. C. McDowell, Special Judge, appointed to act in lieu of Hon. W. T. Miller, Judge, the case was revived as to Wm. L. Roberts, he having recently died, in the name of his heirs, to-wit, James A. Roberts, William H. Roberts, W. F. Roberts, and Louisa Roberts, wife of H. D. Roberts, and Alice Hubbard; the re-

port of partition made by said commissioners was confirmed; O. M. Vicars was appointed commissioner, with directions to convey to the heirs of W. L. Roberts the land assigned to the said William L. Roberts, excepting forty-seven acres, the Starnes tract, which was then owned by W. T. Miller, and this forty-seven acres he was directed to convey to the said Miller; and he, the said Vicars, was also directed to convey the boundary assigned to Archibald Hunsucker and to convey to the said Evelyn Venable and the heirs of Lou Spears and Elizabeth Richmond the boundaries assigned to them, respectively. On the same day, to-wit, September 17, 1895, Vicars, commissioner, filed his report, setting forth that he had executed said deeds as directed, and on the same day another decree was entered confirming his said report. On the same day, however, a third decree was entered in words and figures as follows, to-wit: "It appearing to the court that the land assigned to Wm. L. Roberts should not be conveyed to his heirs in equal proportions, and that the deed made by O. M. Vicars, commissioner, and confirmed by decree entered herein in this day, did so convey it; said decree is, therefore, in so far as it confirms said conveyance to the heirs of said Roberts, set aside and annulled, but said decree is not otherwise affected, and the decree entered herein appointing said Vicars, commissioners, entered on the 11th day of September, 1895, is modified as follows:

Said commissioner will convey to James A. Roberts 6-25, W. F. Roberts 6-25, W. H. Roberts, in his own right, 6-25, and to said W. H. Roberts, as trustee for the benefit of the vendee of Isaac Roberts, deceased, 5-25; Louisa Roberts, 1-25, and Alice Hubbard 1-25. Thereupon on the said day the said commissioner filed another report, showing that he had executed the deed to said James A. Roberts *et als.*, as required by the said last decree, and, on the same day, a fourth decree was entered confirming this last report.

It will be observed that this left nothing in the case except the question as to the value of the improvements which had been made upon the property, three-fifths of which was lost by the purchasers, and the rental value thereof since their purchase. On November 25, 1895, Commissioner Skeen made his report on these matters. By decree of December 12, 1895, this report was recommitted. On March 26, 1896, Skeen, commissioner, made another report on the question of improvements and rental value. This report was excepted to by Evelyn Venable, *et als.* The questions raised by said exceptions were, on April 14, 1896, submitted to McDowell, Special Judge, to be heard by him in vacation.

Nothing more was done in the case until the April term, 1898, at which time a decree was entered, showing the resignation of Judge H. C. McDowell and transferring the case to Russell county. Apparently, however, the case was never actually transferred to Russell county, and, on November 3, 1898, the following agreement was entered into, viz: *James Hunsucker, et als.,* v. *Wm. Spear, et al.* It is agreed by the undersigned that R. T. Irvine may hear and decide the question of costs involved in the cause of *James Hunsucker, et al.,* v. *Wm. Spear, et al.,* and that his decisions shall have the same force and effect as if rendered by Circuit Court of Russell county. We further agree that he may sit now or at any time hereafter fixed without sitting in the term time of said court, and that his decree in the cause may be entered of record as and for said judge.

Witness the following signatures, this 3rd day of November, 1898.

·                    · A. L. PRIDEMORE,

Atty. for Elizabeth Richmond & Lou Spear, deceased, and
    Evelyn Venable.

O. M. VICARS,
                    Atty. for Archibald Hunsucker.

This agreement was not signed by any one representing W. L. Roberts or his children, but, as a matter of fact, he was then represented by Judge W. T. Miller, and, as will hereafter be shown, the said Miller consented to this agreement. Thereafter, to-wit, on April 12, 1899, Special Judge R. T. Irvine passed a decree, reciting: "This cause came on this day, to be heard before R. T. Irvine, a member of the bar, practicing in this court, selected by the plaintiff and defendant to preside at the trial of this cause, pursuant to section 3131, Code of 1887, the judge holding this court having entered an order certifying that he is so situated as to render it improper, in his judgment, for him to decide or preside at the trial of this cause, and thereupon the said cause having been heretofore fully argued by counsel for all the parties in interest, and it being admitted that all the questions arising in the cause have been settled and adjusted between the parties except the questions as to the cost which should be taxed, the amount thereof, and in what proportions, and by which of the parties hereto the same should be paid; and the court having maturely considered the argument of counsel, the bill, cross-bill, answers, depositions of witnesses, commissioner's report in a written opinion filed in the cause, doth adjudge, order and decree." Thereupon it was decreed that a certain part of the costs claimed should be disallowed, and that the balance thereof should be paid in various proportions by the several parties to the suit, and that William L. Roberts should pay one-fifth of a certain item of costs, the total of which amounted to $200, and that "all the aforesaid sums are decreed to be liens upon the interests in the land owned by those against whom said costs are decreed."

Observe that this left nothing whatever to be done in the case, except the collection of the costs and the distribution thereof. The record does not show what had become of the

questions raised with reference to the rental value of the lands and the improvements put thereon, but, as a matter of fact, all of these matters had been settled by compromise outside of court.

The next step taken in the case was on September 10, 1901, at which time a decree was entered by Irvine, Special Judge, reciting that as the costs decreed against W. L. Roberts had not been paid, O. M. Vicars was appointed special commissioner to sell the land heretofore assigned to the said heirs of W. L. Roberts, or so much thereof as might be necessary, to pay said costs.   On December 11, 1901, said Vicars, Special Commissioner, made his report, showing that he had exposed the said land to sale, pursuant to said decree, and that the same had been purchased by W. H. Roberts for $42.00.   The date of this report does not appear in the report itself, but is shown in the following decree.   This decree, entered April 8, 1902, confirms the said report, and empowers Vicars, commissioner, to make a deed to Roberts.   On the same day said commissioner executed the said deed and made report thereof, and, on the same day, another decree was entered in the cause, confirming the said report and deed.   This was the last decree entered in the original proceedings in the said cause, except on, viz., decree of April 10, 1903, which recites that H. A. W. Skeen, receiver in the said cause, had been unable to ascertain all of the persons who were entitled to the said costs, and directing the said Skeen to pay the costs to the clerk of the court, who should hold the same subject to the order of the persons entitled thereto, and striking the case from the docket.

We come now to the subsequent proceedings taken by the appellants in this cause, but, before detailing the same, it will be necessary to go back and state some transactions which occurred *in pais*.

By deed dated April 26, 1882, William L. Roberts con-

veyed to his children—J. A. Roberts, Wade H. Roberts, Isaac
Roberts, Wm. F. Roberts and Geneva Roberts—"in consider-
ation of natural love and affection he has for the said parties
of the second part," a tract of land, "containing 246 acres or
thereabouts, embracing lands he bought of the Rogers' as well
as land he obtained by what is called Court Title," and also
certain articles of personal property. This deed was duly
recorded on the...... day of 1883. It will be observed that
the grantees in this deed were not all of the children of the
said W. L. Roberts; that is, two of the said children, viz:
Louisa, the wife of H. D. Roberts, and Alice, the wife of
..........Hubbard, were left out of this deed, and only his
boys and Geneva, his unmarried daughter, were included
therein.

By deed, dated the.......day of............., the said
W. L. Roberts and the aforesaid children, to whom he had pre-
viously conveyed all of said land, made a deed to W. H. Rob-
erts, conveying to him about forty or fifty acres of the said
land. This forty or fifty acres is included in the land in con-
troversy, and what is known as the "Starnes Tract," and was,
as above shown, conveyed by W. H. Roberts to............
Starnes, and by him sold to W. T. Miller, and conveyed by
Commissioner Vicars, in the suit of *Hunsucker* v. *Spear,* to
the said Miller, in the year 1895.*

On April 27, 1887, William L. Roberts and wife made a
deed to James C. Greenway and James C. Warner, by which
they conveyed "all the coal lying and being upon and under
our farm, containing 400, situated on Guests river, in the
county of Wise, State of Virginia, being my land, and adjoin-
ing the lands of W. H. Roberts, John Hunsucker, Wm. Rob-
inett, William R. Davidson and C. A. Day, with the right, etc."

---

*BY REPORTER.—This deed was prior to the Greenway and Warner and Barrett and
Trigg deeds. The appellants claimed that the "forty or fifty acres" is the "W. H.
Roberts land" referred to.

By deed dated June 29, 1887, William L. Roberts and wife conveyed to O. Barrett, Jr., and T. P. Trigg "all the coal lying and being upon our farm, containing 37 acres, situated on Guests river, in the county of Wise, State of Virginia, being my land, and adjoining the lands of John Wampler, Rives Davidson and Captain Day, and my own tract of land, on which I have sold the coal, with the right," etc.

It is claimed that these two tracts of land conveyed to Greenway and Warner, and Barrett and Trigg, embrace the lands in controversy. . . .

Thereafter, by divers mesne conveyances, the title of Greenway and Warner and Barrett and Trigg, whatever it was, in and to the said two tracts of land, passed to and became vested in the Virginia Iron, Coal & Coke Company.

Note here that the children of Wm. L. Roberts, under the deed of 1882, to them became *lis pendens* purchasers, as did likewise Greenway and Warner and Barrett and Trigg under their deeds of 1887. Wm. L. Roberts, at the time of these deeds, owned only an equity in the property, the legal title being outstanding in the Rogers heirs, the suit of *Hunsucker* v. *Spear* against the Rogers heirs, for the purpose of getting in the title, having been brought in 1879, and being still on the docket.

By deed dated December 30, 1897, James A. Roberts and wife conveyed, *inter alia*, to W. H. Roberts their interest in the land in controversy, viz: a six twenty-fifths interest which had been conveyed to James A. Roberts by O. M. Vicars, commissioner, in 1895; and by deed dated January 14, 1898, W. F. Roberts and wife conveyed their interest in the said land, viz: a six twenty-fifths interest, which had been conveyed to W. F. Roberts by O. M. Vicars, commissioner, in 1895.

These deeds, together with the deed from O. M. Vicars, commissioner, to W. H. Roberts *et als.*, conveyed to W. H. Roberts

the whole of the land in controversy, except an undivided one twenty-fifth owned by Louisa Roberts, and an undivided one twenty-fifth owned by Alice Hubbard, and at the time of the sale by Vicars, commissioner, in 1901, at which sale W. H. Roberts bought in the land for the sum of $42.00; he already owned the whole interest therein, except the said two twenty-fifths interest owned by Louisa Roberts and Alice Hubbard, as aforesaid.

Another fact needs to be here noted, viz: Geneva Roberts, one of the grantees in the deed from W. L. Roberts, dated April 26, 1882, died before the date of the death of her father, and, Isaac Roberts, another of the said grantees, had likewise died. The said Isaac Roberts had, however, sold his interest in the said land before his death.

We come now to the recent proceedings instituted by the appellants herein. On September 8, 1902, Henry K. McHarg and Archer A. Phlegar, receivers of the Virginia Iron, Coal & Coke Company, filed a petition in the old suit of *Hunsucker* v. *Spear*, setting forth the aforesaid deeds from W. L. Roberts to Greenway and Warner and Trigg and Barrett, and chain of title down to McHarg and Phlegar; that Roberts did not have legal title in 1887; that the said suit of *Hunsucker* v. *Spear* was instituted to extract title, and that title was finally conveyed by Vicars, commissioner, to James A. Roberts *et als.*, heirs of Wm. L. Roberts, and setting forth, also, a decree settling the question of costs and the sale made by Vicars, commissioner, and the purchase by W. H. Roberts; and alleging further that the Virginia Iron, Coal & Coke Company had recently discovered that W. H. Roberts was asserting title to the land under the said deeds to him; that Irvine, in the year 1900, had been attorney for W. H. Roberts, and that the decrees passed by him in the said suit were void; that the deed of 1882 from Roberts to his children fraudulent and void; that W. H. Rob-

erts was estopped, both by matters of record and by facts *in
pais*, from asserting title to the said land; that W. H. Roberts
had contracted to sell an interest in the land to T. M. Alder-
son; and thereupon they prayed that the said W. H. Roberts
and T. M. Alderson be made parties defendant to said petition,
and that the sale made by Commissioner Vicars, conveying
said land to Roberts, in 1902, the decree confirming said sale,
the deed from Vicars, commissioner, to Roberts, the decree
confirming the same, and the contract between Roberts and
Alderson be set aside and vacated.

At the same time, to-wit, September, 1902, the said McHarg
and Phlegar and the Virginia Iron, Coal & Coke Company filed
in the Circuit Court of Wise county what they claimed was an
original bill, setting up substantially the same facts set forth
in the said petition and praying for exactly the same relief as
prayed for in their petition, and also for the following addi-
tional relief, viz: that the deed of 1882 from Roberts to his
children be declared void, and that the other deeds from W.
F. Roberts and James A. Roberts, and likewise the deed from
O. M. Vicars, commissioner, to James A. Roberts *et als.*, dated
in 1895, be cancelled and set aside, in so far as they affect the
coal and mining privileges on the said land.

Roberts and Alderson filed a plea in this last-named suit set-
ting forth the pendency of the petition in the suit of *Hunsucker
v. Spear*, and insisting that the complainants ought not to be
allowed to prosecute said petition and also said suit. By a de-
cree of December 9, 1902, complainants were required to elect
which of said causes of action they would prosecute, and there-
upon elected to prosecute the said original suit, as they termed
the same. Thereafter complainants filed an amended and
supplemental bill on February 18, 1903, and shortly thereafter
a second amended and supplemental bill. These amended and
supplemental bills set forth substantially, but in more amplified

form, the alleged facts set forth in the original bill, the only additional allegations, perhaps, being that the Virginia Coal & Iron Company had made some contract concerning the land in controversy with W. H. Roberts, and should be made a party to the suit, and that complainants were, also, at the time of the commencement of the suit, in the actual possession of the coal and mining rights claimed by them, and, also, that Geneva Roberts died before her father, and that they were at least entitled to her interest in the said land on the ground that her interest in the said land had passed to her father, and had inured to their benefit by reason of the deed from her father to Greenway and Warner and Trigg and Barrett.

The defendants, Roberts, Alderson and the Virginia Coal & Iron Company filed a demurrer to the bill, as amended, setting forth divers grounds of demurrer. The court, on April 11, 1903, sustained the demurrer and dismissed the said bill.

On September 15, 1903, complainants filed what they called a "Bill of Review" to the foregoing decree of April 11, 1903. In this bill of review they set forth at great length all the previous proceedings, but allege no new matter whatever, except that they had discovered that the case of *Hunsucker* v. *Spear* had, in 1898, been removed to Russell county, and had never been transferred back to Wise county; and that, therefore, the orders entered by Irvine, Special Judge, in 1899 and 1902 were void for want of jurisdiction.

Defendants demurred to this bill on the ground that it was a bill of review to a bill of review, and, also, because there was no error on the face of the record, and the bill did not allege after discovered evidence.

They also at the same time filed a plea, wherein they set forth that, although the record did not show that the said case of *Hunsucker* v. *Spear* had ever been transferred back from Russell county to Wise county, yet that all of the parties to the

case had agreed that an order should be entered, transferring it back to Wise county, and thought that such a decree had been entered, and thereafter proceeding in the case as if such an order had been entered, agreed upon, Irvine, as Special Judge, contested their rights with reference to costs before him, and finally got a decree from him with reference thereto, and that all parties and privies were now estopped from denying the validity of the decrees as entered by Irvine.

In this bill the deposition of Mr. Irvine was taken, in which he shows that W. H. Roberts, who was the active one of the Roberts children, and who represented the others, together with W. T. Miller, who was acting as his adviser, and also counsel representing the Hunsucker interests and the Rogers interests, appeared before him on the hearing of the case with reference to costs, filed briefs., etc., without ever making any objection to his acting as judge, and that he accordingly went on and passed upon the questions submitted to him.

This cause came on to be heard upon the foregoing pleadings and proof on the 7th of April, 1904, at which time His Honor, Judge Skeen, entered a decree overruling the demurrer, but, being of opinion that there was no ground for a bill of review, the said alleged bill of review was dismissed and the cause stricken from the docket. Thereupon the complainants prayed an appeal from the decree of April 11, 1903, dismissing their original bill, from the decree of April 7, 1904, dismissing their said alleged bill of review, and from the decree of April 10, 1903, striking the suit of *Hunsucker* v. *Spear* from the docket. Which appeal was granted.

*D. D. Hull, G. C. Peery* and *Bond & Bruce*, for the appellant.

*E. M. Fulton, O. M. Vicars* and *Bullitt & Kelley*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court for Wise county, sustaining a demurrer to a bill, as amended, filed by the appellant against the appellees, and dismissing the same; to a decree dismissing a bill of review filed by the appellant, to review that decree; and to a decree striking from the docket the cause of *Hunsucker, &c.* v. *Spear, &c.*, in which the appellant's bill, as amended, was asked to be treated as a petition to rehear. The object of appellant's bill was to remove a cloud upon its title to certain coal and mineral rights claimed by it.

It is insisted by the appellees that the demurrer to the bill of the appellant, as amended, was properly sustained upon several grounds. First, because the deed of W. L. Roberts to his children, dated April 26, 1882, passed to his said children all his right, title, and interest in the land in controversy, and, therefore, the deeds made by him to Greenway and Warner, and to Barrett and Trigg, in the year 1887, passed no interest whatever in the lands.

The appellant, in its amended bill, attacks the deed of April 26, 1882, upon two grounds: First, that it was voluntary and fraudulent; and, second, that the grantees in it are estopped from setting it up as against the appellant.

The appellees insist that the charge in the bill (and when we speak of the bill we mean the bill as amended), that the deed was voluntary and fraudulent, is not sufficiently definite and specific, and that the facts relied on to show that the deed was fraudulent as against the appellant or those under whom it claims, should have 'been set forth.

This objection to the bill is well taken; but that defect was not sufficient to justify the court in sustaining the demurrer to the bill, if the allegations of the bill are sufficient to estop the grantees in the deed of April 26, 1882, or those who claim under

them, from asserting rights under it to the prejudice of the appellant, or those under whom it claims.

The estoppel set up in the bill is of two kinds—estoppel by the record, and estoppel *in pais.* As the question of estoppel by the record belongs more properly to another ground of demurrer it will not now be considered.

As to the estoppel *in pais.* The bill alleges, in substance, that Wade H. Roberts, one of the grantees in the deed of April 26, actively participated in the negotiations that led up to the sales by W. L. Roberts to Greenway and Warner, and to Barrett and Trigg, and induced them to purchase; that said sales were made by W. L. Roberts with the knowledge, acquiescence, and consent of the grantees in the deed of April 26; and that Greenway and Warner, and Barrett and Trigg, and the parties through whom the appellant claims, each and all of them, at the time of their respective purchases, had no knowledge or notice of the alleged deed of April 26, but that they and each of them purchased in good faith, relying upon the assurances, representations, and conduct of the said Wade H. Roberts and the other grantees in that deed.

If these allegations are true, and upon demurrer they must be so treated, they are sufficient to estop the grantees in the deed of April 26 from claiming any rights under it to the prejudice of the appellant (*C. & O. Ry. Co.* v. *Walker,* 100 Va. 69, 40 S. E. 633, and authorities cited), unless, as is urged, the bill was defective in not specifically alleging that the grantees therein had reached their majority when their father and grantor made his sales to Greenway and Warner, and Barrett and Trigg.

The deed of April 26 provides that the grantees therein and neither of them have the right to sell or dispose of the real and personal property embraced in the deed, nor any part thereof, until they arrive at the age of twenty-one years. The

bill does not specifically allege that the grantees had reached their maturity at the time the sales to Greenway and Warner and to Barrett and Trigg were made, but it does charge that they were made with their consent, which could not be true ordinarily unless they had reached the age of twenty-one years. The appellant, as appears from its reply brief, construes the language as averring that the grantees had reached their majority. Whether or not this averment would have been sufficient in setting up the estoppel if that question had been raised at the proper time, it is not necessary to determine. The grounds of demurrer relied on in the Circuit Court were specifically stated. The objection now under consideration was not one of them.. If the objection had been made in the trial court, the defect, if it be one, might have been remedied without costs or delay. It is purely technical and will not in the slightest degree affect the rights of the parties on the merits, as the same proof will be required to sustain the allegation as made as would be necessary if the bill had specifically charged that the grantees had reached their majority.

The next ground relied on here by the appellees to show that the demurrer to the bill was properly sustained is that the appellant and those under whom it claims purchased during the pendency of the suit of *Hunsucker and others* v. *Spears and others*, and are conclusively bound by the proceedings in that cause, by which certain of the children of W. L. Roberts, grantees in the deed of April 26, 1882, who were also *pendente lite* purchasers, acquired absolute title to the land in controversy.

In the year 1879 John Hunsucker, James Hunsucker and W. L. Roberts instituted a suit in the Circuit Court for Wise county against the heirs of Thomas Rogers and others, for the purpose of having a contract for the sale of a tract of land (which includes the land in controversy), entered into by the

complainants in that suit with the heirs of Thomas Rogers, specifically executed, and also to have a partition of the land, made by the complainants between themselves confirmed. By a decree entered in that cause, the contract of sale was specifically executed as to a part of the land, and partition made between the parties to the suit. Before the report of partition was confirmed, W. L. Roberts departed this life, and, on motion of his children, the suit was revived in their names, as his heirs. At that term of the court (September, 1895,) the report of partition was confirmed, and O. M. Vicars was appointed a commissioner to convey to the heirs of W. L. Roberts the land assigned him in the partition, except a certain tract of 47 acres. Pursuant to that decree the commissioner executed a deed to the said heirs of W. L. Roberts. During the same term the court set aside that conveyance by a decree, in which it is recited that, "it appearing to the court that the land assigned to Wm. L. Roberts should not be conveyed to his heirs in equal proportions," and directed that the commissioner should convey to James A. Roberts, W. F. Roberts and W. H. Roberts, each, 6-25; to Louisa Roberts and Alice Hubbard, each, 1-25; and to W. H. Roberts, as trustee, &c., of Isaac Roberts, deceased, 5-25 of the land. The land was conveyed to these parties in accordance with that decree by the commissioner, report made to the court, and his report confirmed.

The proceedings in the case of *Hunsucker and others* v. *Spears and others*, which resulted in the conveyance last mentioned, it is insisted by the appellees, was an adjudication that the grantees in the deed of April 26, 1882, were entitled to the land in controversy, and conclusively binds the appellant, and those under whom it claims, all of them being *pendente lite* purchasers.

The general rule is that a person who acquires an interest in land involved in a pending suit, and from a party litigant, takes

subject to the rights of the other parties to the suit as finally adjudicated and is concluded by the judgment or decree, whether he becomes a party to the suit, and has a day in court, or not. This rule is necessary to give effect to the proceedings of courts of justice. Without it the administration of justice might, in all cases, be frustrated by successive alienations of the property which was the subject of litigation, pending the suit, so that every judgment or decree would be rendered abortive where the recovery of specific property was the object. "But while there is no principle in the law," as was said by Judge Tucker in *French* v. *Loyal Co., &c.*, 5 Leigh, at p. 681, "more essential to the administration of justice than the doctrine of *lis pendens*, when properly understood, there is none which is attended with greater occasional hardship; nor would any be more pernicious, if extended beyond its proper limits." It is, therefore, "confined," as was said by Judge Green in *Newman* v. *Chapman*, 2 Rand. 93, 102, 103, (the leading case in this State on the subject), "in its operation to the extent of the policy on which it was founded; that is, to give effect to the judgment or decree which might be rendered in the suit depending at the time of the purchase." See *French* v. *Loyal Co., supra*, 681-3.

Applying these well settled principles to the facts of the case of *Hunsucker and others* v. *Spears and others*, do the proceedings in that cause which resulted in a conveyance of the land in controversy to the grantees in the deed of April 26, 1882, conclude the appellant from setting up claim to the coal and mining rights in the land as against the grantees in that deed? Neither the grantees in the deed of April 26, 1882, *as such*, nor the appellant, nor those under whom it claims, were ever parties to that suit. W. L. Roberts, the vendor of both sets of claimants, was a party until his death. Then the suit was revived upon the motion of his heirs, and afterward prosecuted

in their names as heirs, not as purchasers. The question, whether the grantees in the deed of April 26, 1882, or the appellant had the better right to the coal and mining rights involved in this case, was not in issue in that case. A decision of that question was wholly unnecessary in determining the questions which were in issue. There was nothing in the record of that suit, at the time of the purchases of Greenway and Warner, and of Barrett and Trigg, which could have given them notice, actual or constructive, that the question of the rights of the grantees in the deed of April 26, 1882, was involved in that case. It could not have been involved in it at that time, for the vendees in that deed were not then parties to that suit in any capacity whatever.

A purchaser having actual or constructive notice of a pending suit can only be held chargeable with knowledge of the facts of which the record in the suit, as it existed at the time of his purchase, would have informed him. He cannot be charged with knowledge of facts afterwards brought into the case. *Davis* v. *Christian, &c.*, 15 Gratt. 11; *Stout* v. *Phillippi Mfg. Co.*, 23 S. E. (W. Va.) 571, 56 Am. St. 843.

But even if it did appear in the record of that court, as appellees insist, that the grantees in the deed of April 26, 1882, had some interest in or claim to the land which W. L. Roberts was seeking to have assigned him, it only appeared incidentally, and did not in any manner affect the litigation between the complainants and defendants in that suit; and a decision as to the validity of such claim was not essential to giving complete relief under the pleadings in the case. In such a case, even where the person whose interest only incidentally appears is a party to the suit, an adjudication of such a claim does not bind a *pendente lite* purchaser who has no notice of such claim; and for a much stronger reason it would not bind where such person was not a party to the suit.

In the case of *Bellamy* v. *Sabine*, 1 De G. & Jo. 566, the question was raised, how far a purchaser from a *pendente lite* defendant is affected by the right of another defendant in that same suit. It was there said that it seems where a person without notice of a suit purchases from one of the defendants property which is the subject of it, he is not in consequence of the pendency of the suit affected by the equitable title of another defendant which appears on the face of the proceedings, but of which he has no notice, and to which it is not necessary for any purposes of the suit to give effect. White & Tudor's Lead. Cas. in Eq., Vol. 2, pt. 1, p. 142.

In Freeman on Judgments (4 Ed.), sec. 200, it is said, in discussing the doctrine of *lis pendens*, that "if in an action by one plaintiff against two or more defendants, it appears from the pleadings that one of the defendants has certain equities against others, but those equities do not in any way affect the present litigation between the plaintiff and defendants, and the rights of the defendants between each other are not sought to be determined, no *lis pendens* can be created beyond the purposes of the suit, and an alienee of one of the defendants is not charged with implied notice of the equities between the co-defendants. It would seem to be perfectly clear, in the absence of authority on the subject, that there could be no *lis pendens* between co-plaintiffs and co-defendants in any action not designed to settle the rights of such plaintiffs or defendants between each other, no matter how many facts not material to the present controversy happened to find their way into the record. If, however, upon proper pleadings, one of the defendants is shown to have certain rights, as against the others, affecting specific property, and entitling him to relief with respect to such property in the present action, a purchaser, after such pleadings, have been filed and notice of the defendant's claim for relief registered (where registry is required) is bound as a purchaser *pendente lite*."

We are of opinion, therefore, that the decree of the September term, 1895, and the conveyance made pursuant thereto of the land in controversy on the 17th of that month, by Vicars, commissioner, invested the grantees in that deed with such title as W. L. Roberts was entitled to at the time of his death; that they took as heirs and not as purchasers from said Roberts; and that said decrees and deed in no way affected the rights of the appellant or those under whom it claims. Neither does the fact that the grantees in the deed of April 26, 1882, had the suit of *Hunsucker, &c.* v. *Spears, &c.*, revived in their names as heirs merely, and not as purchasers, estop them, as the appellant insists, from asserting in this case their rights under the deed of April 26, 1882.

The appellees further insist that "the decrees entered by R. T. Irvine, special judge, in September, 1901, directing sale of the land in controversy for costs, the sale made pursuant thereto, and the decree confirming the sale, and the deed made by Commissioner Vicars and decree confirming this deed dated April 8, 1902, are all valid and binding and cannot be set aside," and that the bill, as an original bill, was demurrable.

The purposes of the suit of *Hunsucker, &c.* v. *Spears, &c.* had been accomplished by the proceedings had therein prior to the decree of April 12, 1899. Nothing further remained to be done in the cause except to settle the question of costs. By that decree the amount of costs were ascertained and apportioned among those liable to pay. Of that sum, as costs for partitioning the land, W. L. Roberts, though dead, was directed to pay $40, and it was decreed to be a lien on the land assigned him, and theretofore conveyed to his heirs by a commissioner of the court. By the same decree a receiver was appointed to collect and disburse the costs, and if the parties against whom costs were decreed did not pay within thirty days' executions were directed to be issued in favor of the receiver against them.

On the 10th of September, 1901, more than two years thereafter, a decree, in which it is recited that the receiver, having reported that the costs adjudged to be a lien upon the Roberts land had not been paid, was entered, directing O. M. Vicars, who was appointed a special commissioner for the purpose, to sell the land, or so much thereof as might be necessary, to satisfy the said costs. Pursuant to that decree the whole tract of 230 acres of land, alleged to be then worth $4,000, was sold, and purchased by W. H. Roberts, one of the heirs of W. L. Roberts, at the price of $42.00. The sale was reported to the court, and confirmed by decree of April 8, 1902.

If the decree of April 12, 1899, was a final decree, as insisted by appellees, and as under our decision we think it was (*Cocke's admr.* v. *Gilpin,* 1 Rob. 20; *Ryan* v. *Ryan,* 32 Gratt. 367; *Rawlings* v. *Rawlings,* 75 Va. 76; *Sims* v. *Sims,* 94 Va. 580, 27 S. E. 436, 64 Am. St. 722), the subsequent proceedings by which the land assigned W. L. Roberts was sold would seem to be without authority of law, at least as to the appellant, who had no notice thereof.

In *Johnson* v. *Anderson,* 76 Va. 766, 771, where the court had given all the relief contemplated in the cause, Judge Burks, speaking for the court, said: "The cause was ended, and the court could proceed no further. It had no further jurisdiction in that proceeding, either of the subject matter or of the parties. . . . The original cause being ended, the proceeding was a new one against the defendant, and being without notice the personal decree against him is a nullity, and would be so treated, we presume, everywhere." See *Battalie, &c.* v. *Maryland Hospital, &c.,* 76 Va. 63; *Smith* v. *Powell,* 98 Va. 431, 36 S. E. 522.

If it had been necessary in the suit of *Hunsucker, &c.* v. *Spears, &c.* to have sold the land, the subject matter of the suit, for the purpose of partition, of course the costs adjudged

against each party would have been a charge upon, and should have been paid out of, his share of the proceeds of the sale. But in that case there was no necessity for sale for the purpose of partition, and none was made, or could have been made therein without the consent of parties. *Howery* v. *Helms*, 20 Gratt. 1. It would, therefore, seem clear that in a suit for partition, where there was no sale necessary or made for the purpose of partition, the court would not have jurisdiction to sell the land assigned one of the parties to satisfy his share of the costs of partition. The costs adjudged against such party would be a lien upon the land assigned him, and perhaps a preferred lien, as they were necessary to perfect his title in severalty to it; but it would have to be enforced like other judgment liens upon the land by a bill in equity, as provided by sec. 3571 of the Code.

But if it be held that the proceedings in question which resulted in the sale of the land are binding upon the heirs of W. L. Roberts, since they, being parties to the suit, are presumed to have had notice thereof and made no objection, still they are not binding upon the appellant, who had no notice of them. As before stated in this opinion, a purchaser having actual or constructive notice of a pending suit can only be held chargeable with knowledge of the facts of which the record in the suit, as it existed at the time of his purchase, would have informed him, and he cannot be charged with knowledge of facts afterward brought into the case, (*Davis* v. *Christian, supra*), or be bound by proceedings had therein affecting the land after a final decree, and beyond the jurisdiction of the court.

Having reached the conclusion that under the allegations of the bill the grantees in the deed of April 26, 1882, are estopped by their conduct from asserting a claim under it to the prejudice of the appellant; that the proceedings in the cause, by which the land assigned to W. L. Roberts was directed to be

conveyed, and was conveyed, to his heirs, did not adjudicate any question between them and the appellant as to which had the better title to the coal and mining rights in controversy; and that the proceedings in the case, after the final decree of April 8, 1899, are not binding on the appellant; we are of opinion that the appellant was entitled to maintain its bill as an original bill to remove a cloud from its title, and that the Circuit Court erred in sustaining a demurrer to the bill and dismissing it.

Having reached this conclusion, it will be unnecessary to consider the other grounds of objection to the validity of the proceedings in the cause of *Hunsucker, &c.* v. *Spears, &c.,* set up in the bill, as a decision of the questions raised by them, however decided, could not render the bill demurrable, or affect the conclusion we have reached.

The decree of the Circuit Court of April 11, 1903, dismissing the appellant's bill, and its decree of April 7, 1904, dismissing the appellant's bill of review, must be reversed and annulled; and this court will enter such decree as the Circuit Court ought to have entered, overruling the demurrer to the bill, and remand the cause to the Circuit Court for further proceedings to be had not in conflict with the views expressed in this opinion. And the appeal from the decree of April 10, 1903, in the case of *Hunsucker, &c.* v. *Spear, &c.* must be dismissed as improvidently awarded, as there was a final decree rendered in that cause more than one year before the bill in the case of *Virginia Iron, Coal & Coke Co.* v. *Roberts,* was asked to be treated as a petition to rehear in that cause.

*Reversed in one case, and appeal dismissed in the other.*