𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

J. J. MOTLEY V. H. VICELLO & BRO., ET ALS.

March 16, 1922.

Absent, West, J.

1. RES ADJUDICATA—*Finality of Decree—Decree in Suit to Set Aside Deed of Trust as Fraudulent—Rehearing—Case at Bar.* —In a suit under section 2460, Code of 1904, to set aside a deed of trust as fraudulent, decrees, the first of which establishe dappellant's claim as a lien upon the property and referred the cause to a commissioner to take account of liens, and the second of which confirmed the report of the commissioner, to which there was no exception, and ordered a sale of the land, did not establish the validity of appellant's lien as *res adjudicata,* so that the court could not afterwards consider the question of the invalidity of the lien as against other lien creditors, to-wit, appellees, afterwards setting up by petition alleged error of law in the holding of such decrees apparent from the record, whether appellees were or were not formal parties to the cause before the decrees were entered, since the decrees were not final.

2. REHEARING—*Interlocutory Decrees.*—Before final decree, a court of equity has jurisdiction on a rehearing to correct errors apparent from the face of the record in interlocutory decrees and orders entered in the cause.

3. REHEARING—*Affidavit—Errors Apparent from the Record.*— Touching an error of law apparent from the record, a petition does not require an affidavit in support thereof in order to be sufficient as a petition for rehearing.

4. REHEARING—*Petition by Persons not Parties to the Cause—Creditors.*—Creditors of defendant, appellees, not parties before the court in any sense at the time the interlocutory decrees were entered in a suit to set aside a deed of trust as fraudulent and establish a lien of appellant, have a right to file a petition for a rehearing of these interlocutory decrees.

5. REHEARING—*Decree Confirming a Commissioner's Report.*—On petition for a rehearing, the circumstance that the decree upon which the rehearing is sought confirmed a commissioner's re-

port, to which there was no exception at the time, is immaterial if the decree is interlocutory.

6. Lis Pendens—*Defective Memorandum—Code of 1904, Section 2460—Description of Property.*—A memorandum required by section 2460, Code of 1904, that fails to comply with the statutory requirement with respect to setting forth the description of the property intended to be affected by the *lis pendens*, is fatally defective.

7. Lis Pendens—*Memorandum—Sufficiency of Description—Code of 1904, Section 2460.*—Since, where the other requisites of the statute are complied with as against other lien creditors, the lien, under the terms of the statute in question (Code 1904, section 2460), dates from the time the memorandum is left with the clerk, the sufficiency of the description of the property contained in the memorandum must be tested as of the time the memorandum was left with the clerk to be recorded. Thus, where the memorandum refers to the bill which was not filed until some days after the memorandum was left with the clerk, the description of the property in the memorandum cannot be aided by the description in the bill.

8. Lis Pendens—*Description of Property—Pleading—That is Certain which can be made Certain.*—The legal maxim that that is certain which can be made certain is applicable to a description of property in a *lis pendens*.

9. Lis Pendens—*Pleading—Description of Res in Pleading.*—The *res* affected must be so described in the pleadings as to be capable of identification by the purchaser, had he known of and examined the record of the suit.

10. Lis Pendens—*Description of Property.*—Where the memorandum required to be filed with the clerk under section 2460 of the Code of 1904 contained in itself a material misdescription, and was absolutely unaided in its description of the property by the references to the pleading, it is fatally defective.

11. Creditors' Suits—*Asserting Claim Held Invalid as Lien Against Surplus.*—Where appellant's lien was held invalid, because of defects in his *lis pendens*, as against other lien creditors, appellees, if, when all liens and the costs are paid out of the proceeds of the sale of the land, a balance is left, the appellant may assert his claim against such balance.

Appeal from a decree of the Circuit Court of Pittsylvania county. Decree for complainants. Defendant appeals.

*Reversed in part and affirmed in part.*

This cause involves a controversy between the appellant, Motley, claiming to be a lien creditor, and Vicello & Bro. and others, appellees, who are lien creditors of one Mrs. Minnie L. Reynolds. The controversy is over the questions of whether the appellant has ever acquired any lien upon a certain tract of land belonging to Mrs. Reynolds, and, if so, whether such lien has priority over the undisputed liens of the appellees upon such land.

The original suit was instituted on February 15, 1916, by certain parties composing a partnership of the firm name and style of Barker & Terry, creditors of the said Mrs. Reynolds, under section 2460 of the Code of 1887, as amended (Code 1904, sec. 2460), the object of which was to set aside a certain alleged fraudulent deed of trust theretofore executed by said Mrs. Reynolds and her husband, which conveyed the said land in trust to secure a certain debt of $2,000.00, as stated in the deed of trust, to their son, O. H. Reynolds. The said Mrs. Reynolds and others were made parties to such suit, and Mrs. Reynolds was duly served with process, but has never made any appearance or defense in the cause to the original bill or to any other proceedings therein.

On the same day that the original suit was instituted— February 15, 1916—the plaintiffs therein, Barker & Terry, by their attorney, executed, acknowledged for recordation and recorded in the clerk's office a *lis pendens,* setting forth the title of the cause and the other matters concerning the same required by the said statute. The bill in this suit, however, was not filed until March 6, 1916.

On February 24, 1916, the appellant, Motley, filed in the clerk's office his petition, under the statute aforesaid, which petition is in the following words and figures:

"To His Honor E. J. Harvey, Judge of Pittsylvania Circuit Court:

"The petition of J. J. Motley respectfully shows unto your

honor that there is pending in your honor's court a certain suit under style of Barker & Terry against Minnie L. *Edwards*, J. H. Reynolds, Otis H. Reynolds and R. C. Blackford, trustee, which has for its object the setting aside and vacating a deed dated ...... day of ..........., 1916, from Minnie L. *Edwards* and J. H. *Edwards*, conveying to R. C. Blackford, trustee, a tract of forty acres of land in Pittsylvania county, Va., to secure to O. H. Reynolds the sum of $2,000.00, as will be seen by the papers in said cause, the basis of said suit to vacate said deed is fraud and intention to defraud creditors of said grantors. Petitioner further shows that the said Minnie L. and J. H. Reynolds owe him $750.00, by notes of several years' standing, as will appear from said notes herewith filed, and he asks to be permitted to file this petition in said suit, to participate therein and to have said deed set aside as to his debts also, may the said Minnie L. Reynolds, J. H. Reynolds, O. H. Reynolds and R. C. Blackford, trustee, be required to answer this petition, but not on oath, may said deed be set aside and may your petitioner's debts be decreed to be paid, etc. Grant process, etc."

On the same day—February 24, 1916—Motley, by his attorney, executed the following memorandum, not acknowledged for record, and left it with the clerk to be recorded as a *lis pendens* under said statute, and the clerk, at 12:15 P. M. on that day, spread the same on record, as per the clerk's certificate at the foot of it.

"Barker & Terry

vs.

"Minnie L. Reynolds, etc.

"Circuit Court of Pittsylvania county.

*"Lis Pendens.*

"J. J. Motley has filed a petition in this suit which is

pending in Pittsylvania Circuit Court, under the style of *Barker & Terry* v. *Minnie L. Reynolds, etc.*, to be made a party to said suit and to unite in setting aside the deed mentioned in said suit from Minnie L. *Edwards*, etc., to R. C. Blackford, trustee, *secureing* to O. H. Reynolds $2,-000.00 and to subject the forty acres therein mentioned to payment of $750.00 due petitioner.

"J. J. Motley,
"By James L. Tredway, his Atty:

"Virginia: In the clerk's office of the Circuit Court for the county of Pittsylvania, at the courthouse thereof, on the 24th day of February, 1916, at 12:15 o'clock P. M., the foregoing writing was admitted to record.
"Teste:            S. S. Hurt, Clerk."

Some time during this same day, whether before or after 12:15 P. M. does not clearly appear from the record, the testimony being in conflict on that point, the alleged fraudulent deed of trust above mentioned in favor of O. H. Reynolds was marked satisfied and was duly released of record, by entry on the margin of the deed book in which it was recorded, etc.

On March 28, 1916, at term, the court below entered a decree which recited, among other things, that the cause came on that day to be heard "on * * * the petition of J. J. Motley, filed in the clerk's office on the 24th day of February, 1916, according to law in such cases provided, taken also for confessed as to all the defendants named therein, they still failing to appear, plead, answer or demur, * * * the *lis pendens* of the petitioner, J. J. Motley, filed in said clerk's office according to law on the 24th day of February, 1916," and thereupon set aside and annulled the said deed of trust and the debt thereby sought to be secured in favor of O. H. Reynolds as fraudulent, and,

among other things decreed "that the debt of J. J. Motley, petitioner in this cause, against the defendants, Minnie L. Reynolds and J. H. Reynolds, for $750.00, with interest from 24th February, 1916, be and the same is hereby established as a lien on said forty-acre tract of land, as of the 24th day of February, 1916, the time of the filing of the *lis pendens* of said petitioner according to law    *    *    *;" and the decree referred the cause to one of the commissioners in chancery of the court to take, state and report accounts of the real estate owned by the said Mrs. Reynolds; the liens thereon, with their priorities, etc.

On June 23, 1916, one of the commissioners in chancery of the court filed his report, under said decree, of the said forty-acre tract of land, as owned by Mrs. Reynolds, and of liens thereon amounting to $3,331.41 as of that date, in nine different classes as to priorities, embracing the debts of Mrs. Reynolds to the appellant and appellees, and a number of her other debts to other parties, placing the debt to appellant, however, in the third class, and the debts to appellees in subsequent classes, thus giving the debt to appellant priority of lien over those to appellees.

The liens of some of the debts to appellees were obtained by means of a deed of trust duly executed by Mrs. Reynolds and husband conveying the said land, dated March 1, 1916, duly recorded on March 2, 1916; and the liens of the other debts of appellees consist of those to Gammon & Co. and M. R. Reynolds, which were acquired by judgments against Mrs. Reynolds, obtained and docketed, respectively, on March 2 and 6, 1916. All of such liens appeared of record in the clerk's office at the time said commissioner's report was stated, and were reported by the commissioner solely from the evidence with respect to them disclosed by such record. None of appellees were then parties of said cause and none of them appeared before the commissioner or requested him to report their debts.

Concerning the parties to whom the commissioner gave notice of the taking of the accounts, the non-appearance of any one before him and the evidence on which he reported all of the debts stated in his report, the commissioner in his report says this:

"* * * he issued notice to all parties concerned of the time and place at which said accounts would be taken and stated, * * * which notice was duly executed on said parties, as will be seen from the same, which are herewith returned, that * * * none of the parties in interest appeared before the said commissioner in obedience to said notice, for which reason the accounts were kept open from day to day until the date of this report, when, from such evidence as was disclosed by the records of the clerk's office * * * the foregoing accounts were made up and completed."

The commissioner's notice does not appear in the record before the appellate court.

On July 19, 1916, at term, the court below entered a decree reciting that the "cause came on this day to be heard on the papers formerly read, the report of (the commissioner in chancery aforesaid), to which there is no exception," and the decree confirmed the report, directed the sale of the said land, "unless the liens herein are paid in ten days," appointed special commissioners to make the sale, fixed the terms of sale, etc.

On March 28, 1917, the appellees filed their petition in the cause, at term, in which they asserted their aforesaid debts as liens upon the said land; alleged that "no process was ever issued or served on (the) defendants" named in the aforesaid petition of appellant, Motley, to-wit: the said Mrs. Reynolds and the other defendants named in such petition; that appellees had never been made parties to the cause up to that time; and took the positions that the aforesaid decrees of March 28, 1916, and July 19, 1916, were ab-

solutely void, in so far as they undertook to establish the debt of appellant, Motley, as a lien upon the said land, be- cause no process had ever been issued upon the aforesaid petition of Motley against the owner of the land, Mrs. Rey- nolds, or served upon her, and hence the court had no juris- diction to enter such decrees so establishing such debt; and also that as the liens of appellees were acquired, recorded and docketed as aforesaid, all prior to March 6, 1916, ex- cept that of M. R. Reynolds, which was acquired and dock- eted on March 6, 1916, as aforesaid, and thus became fixed liens of record upon said land on or before the last-named date, the lien of appellant, if any he has, was invalid as against appellees, as lien creditors, for the reason that no *lis pendens* was left by appellant with the clerk setting out the matters required by section 2460 of the Code of 1887 as amended (section 2460, Code 1904), and also for the rea- son that the memorandum was not acknowledged for record so as to have been recorded in contemplation of law. The petition of appellees further alleged that appellees "had no notice or knowledge" of the said commissioner's report or its contents, or of the decrees last named, "until long after the decree of July 19, 1916, was entered," and prays that "so much of said decree of the March term 1916 * * * as establishes said claim of said Motley as a lien upon said forty acres of land and rendering him a judgment for $750.00, be corrected, set aside and annulled, and that so much of the decree of July term 1916, * * * as con- firms the report of" (the said commissioner in chancery) "*in toto* be corrected and modified by eliminating so much of said report as reports the aforesaid claim of said Motley as a judgment and a lien upon said forty acres of land;" and Motley is made party defendant to such petition.

It appears from a decree entered in the cause on the last-named date, March 28, 1917, that process was directed to be issued on the petition of appellees against the appellant,

and that the special commissioner that day reported a sale of the land on the terms of all cash, which had been paid, which report was confirmed by said decree, and that the first and second-class liens aforesaid were directed to be paid out of the proceeds of sale and the residue of the money was directed to be deposited in bank subject to the further order of court. What amount the land sold for does not appear from this decree, or otherwise in the record. The special commissioner's report is not embraced in the record.

The appellant, Motley, on March 29, 1918, demurred to the petition of appellees on the single ground that the matters and things therein set forth were *res adjudicata;* and at the same time the appellant filed his answer to such petition. In this answer the appellant does not deny the allegation of the petition of appellees that process never issued against nor was ever served upon Mrs. Reynolds, party defendant to the aforesaid petition of appellant. The answer does allege, however, that appellees "were parties to said suit and had knowledge of the pendency thereof and filed their claims before" (the said commissioner in chancery) ; and thus "had their day in court."

The only testimony which appears in the record consists of certain depositions of witnesses on the subject of whether the memorandum relied on by appellant as a *lis pendens* was left with the clerk for record before or after the alleged fraudulent deed was released of record. There is no certificate that this and the portions of the record above referred to constituted all the evidence in the case.

On August 28, 1918, the decree appealed from was entered. That decree provides that "so much of the said decree of the March term, 1916, * * * as takes for confessed the petition of J. J. Motley * * * filed in the clerk's office * * * on the 24th day of February, 1916, be, and the same is, hereby set aside, vacated and annulled,

it appearing that no process to answer the said petition * * * was ever served on the defendants, Minnie L. Reynolds and J. H. Reynolds." And such decree further provides that so much of the decree of the March term, 1916, "as establishes as a lien on the forty (40) acres of land owned by Minnie L. Reynolds the debt of J. J. Motley * * * set forth in his petition, be vacated, set aside and annulled, and the said decree be corrected to that extent, the judge of this court being of opinion that the so-called *lis pendens* of said J. J. Motley was never perfected, acknowledged or recorded as the law requires, and doth decide the same to be defective, invalid and of no effect as a lien upon the real estate of the defendant, Minnie L. Reynolds."

The decree appealed from further provides that the decree of the July term, 1916, is found to be erroneous and "is corrected and annulled so far as it confirms said report in respect to treating the said debt of * * * J. J. Motley as a judgment or lien * * * the judge of this court being of opinion and doth decide that there has been no valid judgment lien or decree in favor of said Motley as against said Minnie L. Reynolds * * *;" the said commissioner in chancery is directed to remodel and restate his report in accordance with such decree; and the petition of appellant is dismissed.

*Samuel A. Anderson* and *Jas. L. Tredway*, for the plaintiff in error.

*Geo. T. Rison* and *William Smith*, for the defendants in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The correctness of the decree of August 28, 1918, under

review, in so far as it holds the alleged lien of the appellant to be invalid as against appellees, constituting other lien creditors of the debtor, depends, primarily, upon whether the memorandum relied on by appellant is valid as a *lis pendens* under the provisions of section 2460 of the Code of 1887, as amended by Acts of 1893-4, page 614. That statute was in force when the proceeding under review occurred. It is somewhat different from the present statute law on the subject. The statute first above referred to appears in the Code of 1904, section 2460, and, so far as material, is as follows:

"A creditor, before obtaining a judgment or decree for his claim, may * * * institute any suit which he might institute after obtaining such judgment or decree to avoid a gift, conveyance * * * or charge upon the estate of his debtor declared void by either of the two preceding sections, and he may in such suit have all the relief in respect to said estate which he would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover. A creditor availing himself of this section shall have a lien from the time of bringing his suit on all the estate, real and personal, hereinbefore mentioned, and a petitioning creditor shall be entitled to a like lien from the time of filing his petition in the court or in the clerk's office of the court in which the suit is brought; but such lien shall not be valid against creditors * * * until and except from the time a memorandum setting forth the title of the cause, the general object thereof, the court wherein it is pending, the amount of the claim asserted by the complainant, a description of the property, and the name of the person whose estate is intended to be affected thereby shall be left with the clerk of the court of the county or corporation wherein the property is, who shall forthwith record the said memorandum in the deed book and index the same in the name of the person aforesaid * * *."

With this preface, we will proceed to deal with the ques-

tions presented by the assignments of error in their order as stated below.

[1-5] 1. Was the validity of the alleged lien of the appellant, Motley, a matter which was so determined by the decrees of March, 1916, and July, 1916, that it falls within the doctrine of *res adjudicata,* so that the court could not afterwards consider the question of the invalidity of the lien as against other lien creditors, to-wit: the appellees, upon the filing of the petition by the latter on March 28, 1917, setting up alleged error of law in the holding of such decrees apparent from the record, in that such decrees undertook to establish the validity of such lien as against the appellees upon a so-called *lis pendens* which, as it is alleged in substance in such petition, is invalid on its face in certain particulars?

The question must be answered in the negative.

In our view of the case it is entirely unnecessary for us to deal here with the argument presented for the appellant on the subject of how far the decrees of March and July, 1916, as entered, may have bound the appellees as *quasi,* although not formal, parties to the cause at the time the decree of July, 1916, was entered. Even if the appellees had been properly made parties and had been before the court when the decrees of March and July, 1916, were entered, neither of those decrees was a final decree. Hence, the court had jurisdiction on a rehearing to correct the errors in them, as was done by the decree appealed from. Touching an error of law apparent from the record, the petition did not require affidavit in support thereof in order to be sufficient as a petition for rehearing. On the other hand, if it were considered that the appellees were not parties before the court in any sense at the time the decrees of March and July, 1916, were entered, still they had a right to file their petition for a rehearing of these interlocutory decrees. *Daily's Ex'r* v. *Warren,* 80 Va. 512. See also *Gills*

v. *Gills,* 126 Va. 526, 101 S. E. 900. The circumstance that one of the decrees confirmed a commissioner's report, to which there was no exception at the time, would be, in such case, immaterial, the decree being interlocutory. *Idem.*

As we view the case, it will be necessary for us to further consider only the questions raised by the assignments of error which are stated below.

[6] 2. Was the memorandum relied on by appellant such a memorandum as is required by section 2460 aforesaid (Code 1904, section 2460), so as to render the lien claimed by appellant under that statute valid as against the liens of the appellees, if the memorandum were considered to have been properly recorded?

This question must be answered in the negative.

Without reference to any other provision of it, we deem it sufficient to say that the memorandum in question is fatally defective in that it failed to comply with the statutory requirement with respect to setting forth the description of the property intended to be affected by the petition of appellant.

[7] Since, where the other requisites of the statute are complied with as against other lien creditors, the lien, under the terms of the statute in question, dates from the time the memorandum is left with the clerk, the sufficiency of the description of the property contained in the memorandum must be tested as of the time the memorandum was left with the clerk to be recorded. Further—

[8, 9] The identity of the deed sought to be set aside by the petition, and what deed and what forty acres of land were "mentioned" in the suit in which the petition was filed, at the time the memorandum was left with the clerk, are essential elements of the description of the property contained in the memorandum in question, as the memorandum relies upon its references to these matters to describe the property. The description of the property is not set

forth in the memorandum itself except by such references. What is expressly said in the memorandum itself of the deed misdescribes the deed in the important particular of saying that the grantor therein was named Minnie L. *Edwards,* whereas the correct name was Minnie L. *Reynolds.* It is doubtless true, however, that the legal maxim that that is certain which can be made certain, which is referred to in the cases of *Norris* v. *Ile,* 152 Ill. 190, 38 N. E. 762, 43 Am. St. Rep. 233, as applicable to the description of property in a pleading, and *Harper* v. *Wallerstein,* 122 Va. 274, 94 S. E. 781, L. R. A. 1918-C, 517, as applicable to such description in a deed, is also applicable to such description in a *lis pendens.* But when we follow up the references aforesaid in the memorandum in question, we find nothing to aid the description. The bill in the principal suit was not filed until March 6th, long after the memorandum was left with the clerk. Therefore, when the memorandum was left with the clerk, which is the time as of which it speaks and makes reference to the principal suit for identification of "the deed mentioned in said suit," and of the "forty acres therein mentioned," nothing was "mentioned" in the suit on either of those subjects or on any other subject. The bill in the suit was not filed until some days after the memorandum was left with the clerk.

As said in Lile's Notes on Eq. Pleading (3), page 231: "Description of *res* in pleading.—The *res* affected must be so described in the pleadings as to be capable of identification by the purchaser, had he known of and examined the record of the suit. *Va. Iron, Coal & Coke Co.* v. *Roberts,* 103 Va. 661, 49 S. E. 984."

As held in *Va. Iron, Coal & Coke Co.* v. *Roberts,* 103 Va. 661, 49 S. E. 984, *supra,* "A purchaser having actual or constructive notice of a pending suit can only be held chargeable with knowledge of the facts of which the record in the suit, as it existed at the time of his purchase, would have

informed him.   He cannot be charged with knowledge of facts afterwards brought into the case."

If the petition of the appellant mentioned in the memorandum could be referred to in aid of the description of the property, it would furnish no such aid. The petition contains precisely the same defects as the memorandum.

[10] Hence, the memorandum, containing in itself a material misdescription, and absolutely unaided in its description of the property by the references therein, does not comply with the statutory requirements aforesaid.

The decree of August 28, 1918, appealed from was, therefore, correct in holding that the said memorandum was defective in its terms, and therefore invalid.

This being our view of the case, it is unnecessary for us to pass upon the holding in the decree appealed from that the memorandum was invalid because not acknowledged for record, and, hence, was not recorded as required by law; and we express no opinion on that subject.   And, for tne same reason, it is unnecessary for us to pass upon the question of whether the decrees of March and July, 1916, were or were not absolutely void for lack of jurisdiction of the court over the necessary parties.

[11]  3.  It is stated in the petition of appellant for the appeal that when all the liens, including the claims of appellees, which are reported and established in the cause against the land, other than the claim of appellant, and all costs of suit, are paid out of the proceeds of the sale of the land, there will still be left of such proceeds some money applicable to the claim of appellant; and the position is taken that, as against this fund, the appellant has a lien under the provisions of said section 2460, provided he succeeds in establishing it

We think this point is well taken, if the facts are correctly stated.

The record before us does not disclose what the pro-

ceeds of the sale of the land were or what are the costs of suit that have been and will have to be paid out of such proceeds. If, however, there should prove to be such a surplus, it would, of course, stand in the place of the land, and to that extent the controversy would be between the owner of the land and appellant only. The statute, just referred to, gives the appellant a lien against the owner of the land from the time of the filing of appellant's petition, if he thereafter, at any time while the suit is pending, succeeds in establishing his lien as against the owner. Whether, in the present condition of the cause as to the pleadings and the parties before the court, appellant is entitled to a decree in the court below enforcing that lien against such a surplus as is mentioned, if it be found to exist, is a question not before us for decision, as the owner of the land is not a party before us. But the appellees had and have of the case, the appellant has the right to have process is- no interest in this question. And certainly, in any aspect sue on his petition against the aforesaid owner and to have the opportunity to establish his lien against the owner to the extent of a surplus aforesaid. Therefore, the decree appealed from was erroneous to the extent that it dismissed the petition of appellant. For this reason, such decree will have to be reversed, but the other holdings of such decree above approved and the result of such other holdings will be affirmed, with costs to appellees, as the parties substantially prevailing upon the appeal.

*Reversed in part and affirmed in part.*